# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00078-CV

**Diana L. Morris a/k/a Diana Aguilar, Appellant**

**v.**

**Juan Aguilar and Margarita Aguilar, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
## NO. D-1-FM-98-000103, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises out of a suit affecting the parent-child relationship ("SAPCR") involving appellant Diana Morris, her husband Phillip Morris, and her parents, appellees Juan and Margarita Aguilar.[1] After the trial court signed a SAPCR order on October 24, 2007, the Morrises filed a timely request for findings of fact and conclusions of law. Appellant filed an affidavit of indigence on November 16, 2007, stating that she and her husband earned about $4,000 a month, had about $4,500 a month in expenses, and owed about $171,000 in debts, including student loans, child support arrearage, attorney's fees, and social security reimbursement. On December 20, 2007, the court reporter filed a contest to the affidavit of indigence, stating that she had received the affidavit on December 18, attaching a letter from appellant's attorney dated December 18 and stating,

---

[1] Diana Morris is the only appellant in this cause. Her husband did not file a notice of appeal from the trial court's order sustaining the contest to their affidavit of indigence.

"Per your request, a copy of the affidavit of indigence is enclosed." On December 20, the trial court signed an order granting an extension of time to hold a hearing on the affidavit until January 3, 2008. On January 3, after the hearing, the trial court signed an order sustaining the court reporter's contest and denying the affidavit of indigence. Appellant timely filed a notice of appeal from that order.

On appeal, appellant complains that the court reporter's contest was filed too late, that the trial court's order did not state the court's reasons for sustaining the contest and thus was in error, and that the evidence produced at the hearing did not support the trial court's decision to sustain the contest. Appellees have responded, although they did not participate in the hearing on the contest or file a contest themselves.[2] We will consider appellees' arguments despite their lack of participation in the indigence hearing.

Appellant first complains that the court reporter's contest was filed too late. However, at the hearing on the court reporter's contest, appellant did not protest that the contest was filed too late or that the trial court should not be holding the contest. Instead, the only arguments raised about the contest were related to the merits of the contest and the allegations in appellant's affidavit. Nor did appellant file any motion or other document with the trial court raising the issue of the contest's timeliness. Without having first raised this issue before the trial court, thus giving

---

[2] Appellees state in their response that appellant's affidavit of indigence was never served on them or their attorney, thus depriving them of "their right to challenge Appellant's claim of indigence." Appellant's affidavit included a certificate of service stating that the affidavit was served on all parties in accordance with the rules of civil procedure on November 16, 2007, but in their response, appellees state that they and their attorney "have no record of receiving the Affidavit of Indigence except through a copy of the clerk's record." In her reply to appellees' response, appellant attaches a fax cover sheet from her attorney to appellee's attorney dated November 17, 2007, purporting to attach the affidavit, and showing that five pages were sent successfully to appellees' counsel's fax number.

the court the opportunity to consider and correct any timeliness-related errors, appellant has not preserved any error related to the untimely contest. *See* Tex. R. App. P. 33.1(a) (record must show complaint was clearly and specifically raised before trial court); *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008) ("the cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it"). We overrule appellant's issue related to the untimeliness of the contest.

Appellant next argues that the trial court's order must be reversed because it does not state the court's reasons for sustaining the contest. She cites rule 145 of the rules of civil procedure, which provides that if a trial court finds that a party seeking to proceed as an indigent can pay costs, "[r]easons for such a finding must be contained in an order." Tex. R. Civ. P. 145(d). However, because this is an appeal, our decision is governed not by rule 145 but by rule 20.1 of the rules of appellate procedure, which provides only that the trial court must sign a written order sustaining a contest within a set time frame or the allegations of indigence are deemed true. Tex. R. App. P. 20.1(i)(4); *see Baughman v. Baughman*, 65 S.W.3d 309, 312-13 (Tex. App.—Waco 2001, pet. denied).[3] Thus, the court did not err in failing to satisfy the requirements of rule 145.

---

[3] We note that two of our sister courts, when interpreting the old rules of appellate procedure, applied rule 145 and held that if a trial court failed to provide reasons for upholding a contest to an affidavit, the allegations should be deemed true. *See Varkonyi v. Troche*, 802 S.W.2d 63, 65 (Tex. App.—El Paso 1990, no writ); *Cowen v. Cox*, No. 01-92-01048-CV, 1993 Tex. App. LEXIS 1835, at *7 (Tex. App.—Houston [1st Dist.] July 1, 1993, no writ) (not designated for publication). However, assuming those opinions were correct when decided, nothing in the current rules of appellate procedure mandates such action. Rule 20.1 does not contain language that leads us to apply the rules of civil procedure or any requirement not spelled out in rule 20.1. *See Baughman v. Baughman*, 65 S.W.3d 309, 312-13 (Tex. App.—Waco 2001, pet. denied).

Finally, appellant argues that the allegations in her affidavit were never controverted and that the allegations and testimony at the hearing affirmatively demonstrated her inability to pay costs and, thus, that the trial court abused its discretion in sustaining the contest.

Appellant contends that the allegations in her and her husband's affidavit were not controverted at the hearing and that the only evidence produced at the hearing further establishes her indigence and inability to pay for the record on appeal. In the affidavit, appellant and her husband averred that they earned about $4,000 a month, with possible weather-related decreases to his construction income, and that they owned one vehicle worth $10,000 and had $480 in their checking account. They further stated that they had two dependent children together, that she has two other children for whom she pays child support, and that he has two children for whom he pays child support. The Morrises stated that they had about $4,501 in monthly expenses, including rent, phones, child care, utilities, child support totaling $430, student loan payments, and credit card payments. They have about $171,269 in debts, including student loans, credit card debts, attorney's and witness fees owed by appellant to appellees' attorney, and child support and social security arreaeages.

At the hearing, appellant testified that she and her husband had seven people in their household and qualified for this Court's pro bono pilot program, which accepts people whose income falls under 175% of the federal poverty guidelines. Appellant has since clarified that although she and her husband have five children between the two of them, only two of the children live with them. Appellant explained that her husband was deaf and so they needed text-enabled cellular phones to communicate. She also explained that they paid $30 a month for a toll tag so that her husband could

save money on gas and spend less time commuting to and from job sites. Appellant testified that she had not sought a part-time job, stating that she had just had a baby recently, but that her husband had. She said she and her husband had been denied a loan from banks and that her husband's parents were unable to give them a loan. She further testified that she and her husband had cable, a video phone, and relay service and that those services were important because her husband used them to communicate with his parents. Appellant said that she and her husband were making monthly payments of $640 for their truck, which they bought in 2003, and that they "owe a little under $8,000" on the averred $10,000 value. She testified that they were behind on their truck payments. Asked whether she'd be willing to make payments for the record on a schedule, she replied that she and her husband could not afford it. Appellant's husband testified that he did not believe he owed as much child support or social security arrearages as he had been told, but as of the date of the hearing, no changes or adjustments had been made. He testified that they were about eight months away from paying off their truck and that he spent about $450 a month in gas and truck maintenance.

At the conclusion of the hearing, the trial court said, "I certainly appreciate that you have bills to pay. I do not find that there's an indigency issue here for your ability to pay for the record. If [the court reporter] is willing to also give it at a reduced rate, that is her decision. But the Affidavit of Indigence is denied for the purpose of this hearing."

As the supreme court has explained, "The test for determining indigence is straightforward: 'Does the record as a whole show by a preponderance of the evidence that the applicant would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so?'" *Higgins v. Randall County Sheriff's Office*,

5

257 S.W.3d 685, 687 (Tex. 2008) (quoting *Pinchback v. Hockless*, 164 S.W.2d 19, 20 (Tex. 1942)). We review a trial court's decision to sustain a contest to an affidavit of indigence for an abuse of discretion, asking whether the court's decision was arbitrary or unreasonable or made without reference to any guiding rules or principles. *Few v. Few*, 271 S.W.3d 341, 345 (Tex. App.—El Paso 2008, pet. denied).

Based on this record, although we are sympathetic to the situation of appellant and her husband, we cannot hold that the trial court clearly abused its discretion in determining that, if they really wanted to, appellant and her husband could arrange to pay for the reporter's record in some fashion. Although their bills seemed to be greater than their income at the time of the hearing, appellant and her husband included in their bills several non-necessities that they could have cut if they needed to, they drove a truck with a substantial monthly payment, and they spent significant sums every month on gas and truck maintenance. Appellant flatly denied that they could consider making payments on the reporter's record, but her husband testified that although they had recently had financial set-backs, appellant "has achieved a good job. Things are starting to get better, but slowly." He also testified that when they fell behind on their truck payment, he made "some catch-up payment and we shuffled funds the best that we could." Although appellant stated that her household consisted of two adults and five children, she clarified that only two of the children were living at home and that she and her husband were paying monthly child support for four other children totaling $430. As appellees note in their letter brief on appeal, several of the Morrises' expenses are for items that they find useful but that are not truly necessities, largely those related to appellant's husband's deafness. And, appellant, although required by a trial court judgment to pay

for appellees' attorney's fees and to pay child support to appellees, has not yet made any payments on those debts.

We cannot conclude that no reasonable person could have concluded that appellant and her husband, had they really wanted to, could have made arrangements to pay for the reporter's record out of their $4,000 monthly pay.[4] *See Higgins*, 257 S.W.3d at 687. We can reach no other conclusion than to affirm the trial court's order sustaining the contest to appellant's affidavit.

_____

David Puryear,  Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   July 9, 2010

---

[4] Although the trial court did not make findings of fact or conclusions of law or explain its ruling at the hearing, other than to say it recognized that appellant had many bills to pay, appellant did not request findings of fact or conclusions of law or protest any lack of explanation.

7